USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/25/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
TONI EDMONDS,

             Plaintiff,

    - v.-

CENTRAL N.Y. PSYCHIATRIC CENTER,
And DR. SHAHIM, in their
individual and official
capacities,
            Defendants.
------------------------------------X

10 Civ. 5810(DAB)(KNF)
Adoption of Report
and Recommendation

DEBORAH A. BATTS, United States District Judge.

    Pro se Plaintiff Toni Edmonds ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983, alleging that her Eighth Amendment rights were violated while in the custody of Defendant Central N.Y. Psychiatric Center, and while being treated by Dr. Shahim (together "Defendants") when they failed to: (1) inform here that she was diabetic; and (2) treat her diabetes for a period of five months. Defendants now move for Dismissal under Federal Rule of Civil Procedure 12(b)(6).

    This matter is before the Court upon the May 31, 2011 Report and Recommendation ("Report") of United States Magistrate Judge Kevin Nathaniel Fox. The Report recommends that the Defendants' motion to dismiss be: (1) granted in part, dismissing all of Plaintiff's claims again the Central N.Y. Psychiatric Center and against Dr. Shahim, in his official capacity; and (2) denied in all other respects. Defendants

1

object to Judge Fox's findings that Plaintiff states a viable Eighth Amendment violation against Dr. Shahim in his individual capacity, and that Dr. Shahim is not entitled to qualified immunity. Plaintiff has not filed any objections.

For the reasons below, the Court APPROVES, ADOPTS, and RATIFIES Judge Fox's Report in its entirety. Defendants' Motion to Dismiss is granted in part and denied in part. Defendants' Motion to Dismiss Plaintiff's claims again the Central N.Y. Psychiatric Center and against Dr. Shahim, in his official capacity is hereby GRANTED; and (2) Defendants' Motion to Dismiss is hereby DENIED in all other respects.

## I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), the District Court is required to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Where a party raises only general objections, and for portions of the Report to which no objection is made, "a district court need only satisfy itself there is no clear error on the face of the record." See Advance Coatina Tech. Inc. v. LEP Chem. Ltd., 142 F.R.D. 91, 94 (S.D.N.Y. 1992). After conducting the appropriate level of review, the Court may then accept, reject, or modify, in whole or in part, the

findings or recommendations made by the Magistrate. 28 U.S.C § 636(b)(1)(C); see also Local Rule 72.1(d).

As Defendants object to Judge Fox's recommendation that Plaintiff's Eighth Amendment claim against Dr. Shahim, in his individual capacity, survives, and that Dr. Shahim should be granted qualified immunity, the Court will review Judge Fox's recommendation de novo. The Court reviews the remainder of the Report for clear error.

## II. FACTUAL BACKGROUND[1]

Plaintiff's allegations relate to a five month period of medical treatment, within a year-long period. Plaintiff was prescribed the psychiatric medication Risperdal and, subsequently, she developed diabetes.

In May 2009, Plaintiff was an inmate at Taconic Correctional Facility. On or about May 14, 2009, Defendant Dr. Shahim changed Plaintiff's psychiatric medication from Seroquel to Risperdal, a drug with the possible side-effect of increasing one's blood sugar level. (Compl., "What Happened"). Plaintiff alleges that despite this side-effect, her blood sugar was not tested until October 15, 2009, where her fasting glucose level

---

[1] The following facts are taken from the Complaint, and Plaintiff's "Affirmation . . . in Opposition to Defendants['] Motion for Summary Judgment" ("Pl.'s Opp.") and are assumed to be true for purposes of this motion to dismiss. Plaintiff's affirmation entitled "Summary Judgment" is mislabeled.

3

was 116 mg/dL.[2] (Compl., Ex. B). Plaintiff remained on Risperdal until January 12, 2010, when Dr. Shahim changed Plaintiff's psychiatric medication to Geodon.[3] (Compl., "What Happened"). Plaintiff's blood sugar was tested on January 5, 2010 and shown to be 124 mg/dL.[4] Plaintiff's fasting glucose level was checked again on January 26, 2010; Plaintiff's blood sugar was shown to be 119 mg/dL, and her HGB A1C[5] level was 6.7%.

On May 3, 2010, Plaintiff was transferred to Bedford Hills Correctional Facility. (Compl., "What Happened"). On May 10, 2010, Plaintiff's tested HGB A1C level was 9.5%. (Compl., Ex. B). Sometime thereafter, Plaintiff was prescribed Glyburide

---

[2] The fasting plasma glucose test is generally used to diagnose type 1 diabetes. The normal range for a fasting blood glucose level is between 70 and 100 milligrams per deciliter (mg/dL) of blood. A diagnosis of diabetes is usually made if the glucose level is 126 mg/dL or higher on the results of two fasting plasma glucose tests, more than 200 mg/dL on one test, or if the results indicate high glucose levels in combination with other diabetic symptoms. (Report at 7, n.3) (citing AMA Encyclopedia at 455)).

[3] Geodon also has the possible side effect of increasing one's blood sugar level. Geodon Important Safety Information, available at http://geodon.com/default.aspx.

[4] This test result is found in Plaintiff's Opposition, which contains her medical record of January 12, 2010 under "Chief Complaint and Current Issues," and "Changes in Medical Status."

[5] The glycosylated hemoglobin test (hemoglobin A1c) measures the amount of sugar that is attached to the red blood cells. As Red blood cells remain in the bloodstream for about 3 months, this test reveals the average blood sugar level for the past 12 weeks. The results of this test are not affected by short term fluctuations. (Report at p. *2, n. 2) (citing AMA Encyclopedia at 460)).

4

Daily (a diabetic medication) and insulin as needed. (Compl, "What Happened"). Plaintiff's blood sugar level was tested again on May 20, 2010 and found to be 298 mg/dL, prompting immediate administration of two units of insulin. (Id.) Plaintiff's blood sugar level was tested again on the morning of May 24, 2010 and found to be 280 mg/dL, prompting immediate administration of four units of insulin. (Id.) On May 27, 2010, Plaintiff's blood sugar level was tested in morning and shown to have reduced to 168 mg/dL, and accordingly, Plaintiff was not administered any insulin. Since then, Plaintiff's blood sugar level is monitored twice a week in the morning, and she is still taking Glyburide Daily. (Id.) Plaintiff was not informed of her sugar levels, or otherwise treated, during the period of January 2010 thorugh May 2010, despite suffering from numbness of her hands and feet, lightheadedness, profuse sweating, and occasional blurry vision. (Compl., "What Happened").

On or about June 2, 2010, Plaintiff submitted a grievance letter to Bedford Hills Correctional Facility Inmate Grievance Review Committee and was informed that her issues were non-grieveable because the issue stemmed from the Office of Mental Health.[6] (Compl., "What Happened"). Plaintiff notified Central New York Psychiatric Center ("CNYPC") about her grievance on or

---

[6] The response from Bedford Hills Correctional Facility Inmate Grievance Review Committee was not attached to Plaintiff's pleadings.

5

about June 6, 2010 and June 11, 2010, and received no response. (Id.) Plaintiff sent a subsequent letter on June 22, 2010, and was later informed by CNYPC's Director of Risk Management that Plaintiff's treatment was provided consistent with CNYPC policy. (Compl., Ex. A).

### III. DISCUSSION

A. Standard for Rule 12(b)(6)

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007). The plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65 (internal quotation marks omitted). In deciding a motion to dismiss, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff,

6

and construe the complaint liberally." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (citation omitted). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions" will not withstand dismissal. Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (citation omitted; alteration in original).

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Zdenek Marek v. Old Navy (Apparel) Inc., 348 F. Supp. 2d 275, 279 (S.D.N.Y. 2004) (citing Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotations omitted)). It is also "well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1988); see also Dayton Monetary Associates v. Donaldson, Lufkin, & Jenrette Securities, 1992 WL 204374, *3 (S.D.N.Y. Aug. 11, 2002) (public court filings considered on 12(b)(6) motion to dismiss).

Federal Rule of Civil Procedure 8(a)(2) provides that civil complaints "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), "in order to give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests." Twombly, 127 S.Ct. at 1964. Rule 8(a)(2) requires that the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . . ." Twombly, 127 S.Ct. at 1965 (internal citations omitted). While "[s]pecific facts are not necessary," Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), "[b]road, sweeping allegations of infringement do not comply with Rule 8." Marvullo v. Gruner & Jahr, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000). However, the Court must consider a pro se plaintiff's submissions liberally, and interpret them to raise the strongest arguments they can suggest. See Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (citing Burgos v. Hopkins, 41 F.3d 787, 790 (2d Cir. 1994)).

B. Standard for § 1983 deliberate indifference claim

42 U.S.C. § 1983 enables a plaintiff to bring a cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A successful § 1983 must demonstrate that "the conduct

complained of was committed by a person acting under color of state law . . . [and that] this conduct deprived a person of rights . . . secured by the Constitution or laws of the United States." Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indus. Development Agency, 77 F.3d 26, 29-30 (2d Cir. 1996) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981)) (internal quotations omitted). In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court extended the Eighth Amendment's right to be free from "cruel and unusual punishments," U.S. Const. amend. VIII, to apply to prison employees' "deliberate indifference [to an inmate's] serious medical needs," and thereby actionable under § 1983. Estelle, 429 U.S. at 104-05. However, the Court clarified that "[t]his conclusion does not mean . . . that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105.

To succeed under a § 1983 claim for deliberate indifference to a serious medical need, a plaintiff must demonstrate: (1) an objectively "sufficiently serious" medical need, Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996); and (2) that subjectively the defendant possessed the requisite culpable mental state. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Qualified immunity may act as an affirmative defense, shielding public officials from liability for their

9

discretionary acts that do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hathaway v. Coughlin, 37 F.3d 63 (2d Cir. 1994) (rev'd on other grounds, Hathaway, 99 F.3d 550 (2d Cir. 1996); citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). If the asserted federal rights are well-established, qualified immunity may apply if it is "objectively reasonable for the public official to believe that his acts did not violate those rights." Id. (citing Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991)). Where qualified immunity is asserted on a Rule 12(b)(6) motion, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

C. Application of Standard

1. Serious Medical Need

In his analysis, Judge Fox determined that Plaintiff successfully pled an underlying medical condition (diabetes) and that diabetes constituted a "serious medical need" because Plaintiff suffered alleged physical effects from the diabetes and the lack of treatment to Plaintiff went on for five months. Defendants assert that Judge Fox's analysis is flawed as "the

10

risk" to Plaintiff from the alleged lack of treatment by Dr. Shahim did not constitute a "serious medical need."

A serious medical need is generally characterized by "a condition of urgency, one that may produce death, degeneration, or extreme pain." Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (citation omitted). However, the onset of diabetes can be "a sufficiently serious medical condition to meet" the threshold of a serious medical need. Beatty v. Davidson, 713 F. Supp. 2d 167, 174 (W.D.N.Y. 2010). When the prisoner's claim is one of a temporary delay or interruption in the provision of otherwise adequate medical treatment, the focus shifts to the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the prisoner's underlying medical condition in the abstract. Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003). Factors to consider in determining the existence of a serious medical condition include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [] the existence of chronic and substantial pain," Chance v. Armstrong, 143 F.3d 698, 702 (2d

11

Cir. 1998), or "the absence of adverse medical effects or demonstrable physical injury.[7]" Carpenter, 316 F.3d at 187.

The two leading Second Circuit cases in this area are Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003), and Harrison v. Barkley, 219 F.3d 132 (2000). In Carpenter, the Second Circuit found that the risks from a short interruption of the plaintiff's HIV care, when plaintiff did not receive anti-viral medication, did not constitute a serious medical need. The Second Circuit denied plaintiff relief on his Eighth Amendment claim, despite his serious underlying medical condition of HIV, because of Plaintiff's failure to present any evidence of harm to his health as a result of the lapse in treatment. Carpenter, 316 F.3d at 186.

However, in Harrison, the plaintiff alleged a failure by officials to treat a tooth cavity over a longer period of time than the plaintiff in Carpenter. In addition, the plaintiff in Harrison alleged to suffer from physical effects as a result of the lack of treatment. The Second Circuit allowed the Harrison plaintiff's Eighth Amendment claim to survive. The Second Circuit found that even a seemly minor medical condition, left

---

[7] At times, "[s]imilar evidence, including evidence of adverse effects" may be relevant to both the objective component of a serious medical need and the subjective determination of deliberate indifference. Carpenter, 316 F.3d at p. 187, n.12.

untreated over sufficient time, could constitute a "serious medical need."

Here, the time frame of alleged lack of treatment is a significant period of time (5 months, from January 2010 through May of 2010) and it is a much longer period of time than that in Carpenter. In addition, the Plaintiff alleges she suffered harm from the physical effects of her diabetes.[8] Accordingly, Defendants' alleged lack of treatment is better characterized as being in accord with Harrison.[9]

Defendants also argue that while diabetes, in the abstract, is a serious medical condition, the risk of harm to Plaintiff's health here did not rise to the level of a "serious medical need" because Plaintiff's readings were in an "acceptable range." Defendants maintain that while Plaintiff's blood sugar readings of October 2009 and January 2010 were on the high end of normal, they were not sufficiently high enough to constitute an unreasonable risk of harm. See Monk v. Comm'r of Soc.

---

[8] Plaintiff's alleged physical symptoms include, numbness of her hands and feet, lightheadedness, profuse sweating, and occasional blurry vision. (Compl., "What Happened.")

[9] Plaintiff's blood sugar levels were monitored beginning in October 2009, and Dr. Shahim's medical notes of February 6, 2010 denote his intention to repeat an examination of the plaintiff in the following month. There is no evidence at this point that Dr. Shahim ultimately provided any further treatment. However, the Court cannot foreclose the possibility that Defendants could ultimately show that Plaintiff's treatment is more consistent with that of the plaintiff in Carpenter.

13

Security, 2008 WL 323769, at *2, n. 1 (N.D.N.Y. Feb. 5, 2008)(expressing that a range of 70 - 120 mg/dL for non-diabetics is acceptable). However, without a developed record, the Court is not in a position to decide whether Plaintiff's test results did not present a risk such that Plaintiff's diabetes constituted a serious medical need.[10]

### 2. Deliberate Indifference

Plaintiff alleges that her January 26, 2010 A1C test result of "6.7 HI" indicated that she was diabetic, and that this information was sufficient to put Dr. Shahim on notice of her diabetes. Judge Fox concluded that Dr. Shahim's subsequent failure to treat adequately Plaintiff's condition constituted deliberate indifference. Defendants object to the determination that the information available to Dr. Shahim was sufficient to put him on notice that Plaintiff was diabetic and at risk of serious medical consequences.

To satisfy the subjective prong of the deliberate indifference standard, a plaintiff must prove that the prison official was aware of, and consciously disregarded, the

---

[10]  See Carpenter, 316 F.3d at 188, n.14 ("the 'seriousness' determination [in Eighth Amendment denial of medical care cases] will often be ill-suited for resolution at the pleading stage and will have to await summary judgment proceedings, at which point a fully developed medical record will inform the court as to the nature of the inmate's condition.").

prisoner's medical condition. <u>Chance</u>, 143 F.3d at 703; <u>see also</u> <u>Farmer</u>, 511 U.S. at 837. A physician's mere negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a § 1983 action. <u>Estelle</u>, 429 U.S. at 105-06 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, a physician who "delay[s] . . . treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. <u>Harrison</u>, 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under § 1983 if the treatment provided is "adequate." <u>Chance</u>, 143 F.3d at 703.

Defendants' assert that Plaintiff's "slightly high" blood sugar levels were not sufficient to alert Dr. Shahim to Plaintiff's diabetic condition, or any serious medical consequences. Defs.' Mem. Law at 8, 9. There is currently no evidence, one way or the other, whether Dr. Shahim "drew the inference" that Plaintiff's blood sugar levels on January 26, 2010 were a result of diabetes, and not just a side-effect of Geodon.[11]

---

[11]     Defendants assert that the right to medical information is only implicated in right to refuse treatment cases. Defs.'

Defendants also argue that they were not deliberately indifferent to Plaintiff's medical needs because Dr. Shahim acted in response to Plaintiff's initial high blood sugar indications by adjusting Plaintiff's medication from Risperdal to Geodon. Defs.' Mem. Law at 7. While Defendants are correct that, generally, "adjustment of medication is 'inconsistent with deliberate indifference,'" Defs.' Mem. Law at 7 (quoting Price v. Reilly, 697 F. Supp. 2d 344, 361 (E.D.N.Y. 2010)), this rule is inapplicable here as there was no adjustment of Plaintiff's medication during the disputed time period culminating in the rise of Plaintiff's HGB A1C level by 2.8%, and an ultimate diagnosis of diabetes.

At this stage of the litigation, there is no insight into Dr. Shahim's subjective interpretation of Plaintiff's test results. The record needs to be developed in order to understand why Plaintiff was not seen by Dr. Shahim, or any other physician, in the disputed time frame.

---

Mem. Law at 9. See Hathaway, 37 F.3d. However, the Second Circuit has found deliberate indifference where a doctor, aware of conditions leading to a serious medical condition, failed to inform his patient of such conditions. See Hathaway, 37 F.3d (finding that the "most telling" evidence of a defendant's deliberate indifference was his failure to inform the plaintiff of the two broken pins in the plaintiff's hip, after an x-ray showed the pins as the cause of the plaintiff's great pain).

D. Qualified Immunity

Judge Fox determined that Dr. Shahim is not entitled to qualified immunity at this stage of the litigation. Defendants object to Judge Fox's findings that Plaintiff alleges the violation of a "clearly established" constitutional right, and that Plaintiff alleges facts from which a reasonable inference may be drawn that Dr. Shahim inflicted cruel and unusual punishment upon Plaintiff. Kaminsky v. Rosenblum, 929 F.2d 922, 923 (2d. Cir. 1991)("[plaintiff's] § 1983 action alleges the quality of medical care so inadequate as to constitute cruel and unusual punishment under the Eighth Amendment.").

To establish a qualified immunity defense, a defendant "must show that it was objectively reasonable for them to believe that they had not acted with the requisite deliberate indifference." McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004). "'[A] defendant asserting a qualified immunity defense at the 12(b)(6) stage ... faces a formidable hurdle,'" McNamara v. City of New York, No. 05 CV 6025, 2007 WL 1062564, at *9 (E.D.N.Y. March 30, 2007) (quoting Sales v. Barizone, No. 03 CV 6691, 2004 WL 2781752, at *15 (S.D.N.Y. Dec. 2, 2004)), "[b]ecause the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, 'the defense of qualified immunity [usually] cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion for failure

17

to state a claim upon which relief can be granted.' " Id. (quoting Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983)).

Given the unresolved issues of the information available to Dr. Shahim, and the appropriateness of Plaintiff's treatment and medical attention, at this time the Court cannot conclude whether it was objectively reasonable for Dr. Shahim to believe that his conduct did not violate any of Plaintiff's rights.

## IV. CONCLUSION

Having conducted the appropriate levels of review of the Report and Recommendation of United States Magistrate Judge Kevin N. Fox dated May 31, 2011, the Court APPROVES, ADOPTS, and RATIFIES Judge Fox's Report in its entirety. Defendants' Motion to Dismiss is granted in part and denied in part. Defendants' Motion to Dismiss Plaintiff's claims again the Central N.Y. Psychiatric Center and against Dr. Shahim, in his official capacity is hereby GRANTED; and (2) Defendants' Motion to Dismiss is hereby DENIED in all other respects.

SO ORDERED.

Dated:   New York, New York
         August 25, 2010

*Deborah A. Batts*
DEBORAH A. BATTS
United States District Judge

18